**FILED**

**May 12, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.S. and C.M.**

**No. 21-0852** (Cabell County 20-JA-150 and 20-JA-151)

## MEMORANDUM DECISION

Petitioner Mother V.M., by counsel Randall D. Wall, appeals the Circuit Court of Cabell County's September 29, 2021, order terminating her parental rights to D.S. and C.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Robert E. Wilkinson ("guardian"), filed a response on the children's behalf in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future and in terminating her parental rights to the children rather than imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner abused controlled substances and engaged in domestic violence. The DHHR observed an "array of drug paraphernalia" during its investigation in petitioner's home. According to the petition, petitioner admitted to recently using fentanyl. Petitioner waived her preliminary hearing later that month, and the children were placed with separate relatives.

The circuit court held an adjudicatory hearing in October of 2020, and petitioner stipulated to the allegations in the petition, including that she abused methamphetamine and heroin. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Thereafter, petitioner moved for a post-adjudicatory improvement period, and the court granted that motion. The court ordered that petitioner participate in parenting and adult life skills classes, supervised visitation with the children, and random drug screening. Petitioner agreed to all the terms and conditions of her improvement period.

The circuit court held a series of review hearings concerning petitioner's improvement period in the following months. In December of 2020, the court held a hearing during which petitioner testified that she was unable to participate in drug screens due to a lack of photo identification. The court allowed petitioner's improvement period to continue despite representations from the DHHR that petitioner was only "minimally compliant." The court further ordered that petitioner was permitted visitation with the children if she could produce negative drug screens.

The court held another hearing in March of 2021 during which petitioner testified that she was still unable to participate in drug screens. Petitioner cited recent ice storms and flooding conditions in southern West Virginia. The court again allowed petitioner's improvement period to continue but noted that petitioner had not participated in visitations because of her failure to participate in drug screens. In June of 2021 and August of 2021, the circuit court held its final review hearings on petitioner's improvement period. At the end of the August hearing, the court terminated petitioner's improvement period and set the matter for disposition.

The circuit court held a final dispositional hearing in September of 2021 during which a Child Protective Services ("CPS") worker testified that petitioner "complied very minimally in the beginning [of the improvement period], and [since] then she has not complied any through the end of it." The CPS worker testified that petitioner had ceased contact with her and that she no longer knew where petitioner lived. The worker explained that petitioner failed to routinely participate in drug screens and had not participated in any drug screens since June of 2021. The worker further noted that petitioner was minimally compliant with her required parenting and adult life skills classes, and she stated she was unaware that petitioner had participated in any substance abuse treatment or counseling. As a result of her noncompliance, the worker noted that petitioner did not have any in-person visitation with the children throughout the entirety of the proceedings. The worker testified that petitioner "has not completed any services, she's not drug screened, [and] she has done nothing."

Next, petitioner testified that she had recently moved to Colorado and stated that she ceased communicating with the CPS worker "because she's rude." Petitioner testified that she did not have any set date to return to West Virginia. Petitioner argued that the children should be returned to her custody because she had "straightened [her] life up." Petitioner contended that she had only failed to complete her parenting classes because of vehicle issues. However, under questioning, petitioner also admitted that she had not participated in required drug screens.

After considering the evidence, the circuit court found that petitioner has "voluntarily absented [her]self from West Virginia for an extended period." The court further found that petitioner did not participate in parenting classes, drug screens, or visitation. The court further noted that petitioner blamed "everyone else" for her drug addiction, inability to be present, and

inability to parent. The court ultimately found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future. Accordingly, the court entered its September 29, 2021, order, terminating her parental rights to the children. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred when it found that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. In support, petitioner asserts that "no evidence was produced or offered that petitioner was continuing to abuse alcohol or drugs to the extent her parenting skills were impaired." Petitioner avers that she had been sober for several months and cites her own testimony as evidence. Petitioner contends that there was no evidence presented that she was unwilling or refused to cooperate with the family case plan, and that the DHHR's sole witness, a CPS worker, did not testify as to petitioner's substance abuse or domestic violence in the home after the filing of the petition. We find this argument to be meritless.

West Virginia Code § 49-4-604(d)(3) clearly indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

---

[2]D.S.'s father voluntarily relinquished his guardianship rights to the child. C.M.'s father's parental rights were terminated below. According to the parties, the permanency plan for D.S. is guardianship with her grandparents, and the permanency plan for C.M. is adoption by his aunt.

Here, petitioner stipulated to abusing controlled substances, including methamphetamine and heroin, during the proceedings. The record shows that she routinely failed to participate in drug screens. Further, the record indicates that petitioner failed to complete her required parenting and life skills classes, failed to visit with the children, and failed to remain in touch with CPS workers, including after she moved to Colorado. While petitioner claimed to be unable to participate in services for various reasons over the course of the proceedings—including a lack of proper photo identification, transportation issues, and weather conditions—the DHHR demonstrated at several hearings that petitioner failed to comply with nearly all offered services during a nine-month period. As a result, the circuit court eventually terminated petitioner's improvement period in August of 2021 due to her noncompliance.

Although petitioner asserts on appeal that she ceased abusing controlled substances on her own and without the assistance of the DHHR, the record contains no evidence corroborating this claim other than her own self-serving testimony. As noted, petitioner failed to visit with the children during the proceedings and moved out of state, leaving the children in foster placements. This Court has "previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Petitioner also failed to provide a set return date to West Virginia during her testimony. Based on this evidence, the circuit court correctly found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future.

Next, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner contends that she had substantially corrected the conditions of the petition. Petitioner does not deny that a CPS worker "testified that [she] had not complied with her case plan" but argues that the DHHR "had no evidence that [she] was still using illegal substances." Petitioner points to her testimony that she was sober, employed, and had given birth to a newborn child in Colorado who did not have any drug withdrawal symptoms. Finally, petitioner argues that the circuit court could have allowed her to have continued contact with one of the children since that child was being placed with paternal grandparents. Upon our review, we find no error in the circuit court's termination of petitioner's parental rights.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" as follows: "the abusing [parent] . . . ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help."

Here, petitioner does not deny that she failed to follow through with a reasonable family case plan. It is abundantly clear from the record that petitioner failed to participate in drug screens, parenting classes, or visitation with the children. Petitioner also ceased contact with her CPS worker and the DHHR because she thought her worker was "rude." Petitioner's complete

4

noncompliance eventually resulted in the termination of her improvement period. Further, even after petitioner's improvement period was revoked, the evidence shows that she chose to leave the state with no set return date, rather than further participate in services during the proceedings.

Finally, while petitioner suggests that the circuit court could have instituted a less-restrictive alternative because one of the children is being placed with the grandparents, the record supports a finding that termination of parental rights was necessary for the welfare of the children. Due to her unresolved substance abuse, petitioner presented a danger to the children if in her custody. As such, it is clear that termination of petitioner's parental rights was necessary to provide permanency for the children and, therefore, necessary for their welfare. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's order terminating petitioner's parental rights without the imposition of a lesser-restrictive alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 29, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn